# In the United States Court of Federal Claims

No. 22-404 C
Filed Under Seal: June 27, 2022
Reissued: July 14, 2022[*]

```
* * * * * * * * * * * * * * * * *  *
                                   *
TRACE SYSTEMS INC.,                *
                                   *
            Plaintiff,             *
                                   *
    v.                             *
                                   *
THE UNITED STATES,                 *
                                   *
            Defendant,             *
                                   *
and                                *
                                   *
GENERAL DYNAMICS                   *
INFORMATION TECHNOLOGY, INC.,      *
                                   *
            Defendant-Intervenor.  *
                                   *
* * * * * * * * * * * * * * * * *  *
```

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

Plaintiff, Trace Systems, Inc., filed a bid protest in this Court on April 7, 2022, challenging the government's decision to cancel a solicitation for a communications technical support services contract and, as a result of that cancellation, the government's decision to cancel an indefinite delivery, indefinite quantity task order awarded to Plaintiff. *See generally* ECF No. 1. Plaintiff additionally protests the government's decision to award a sole source contract to Defendant-Intervenor, General Dynamics Information Technology, Inc. ("GDIT"). *Id*. Pursuant to the Court's initial scheduling order and a brief extension, the government filed the administrative record in this case on May 3, 2022. *See* ECF Nos. 39–42.

In response to the filing of the administrative record, on May 6, 2022, Plaintiff filed a motion styled as a motion to compel and for leave to conduct discovery. ECF No. 45; *see also*

---

[*] Pursuant to the protective order entered in this case, this opinion was filed initially under seal. The parties in their status report, ECF No. 72, did not propose redactions of confidential or proprietary information. In addition, the Court made minor typographical and stylistic corrections.

ECF No. 46.  Through its motion, Plaintiff seeks to have the government complete what Plaintiff views as an incomplete administrative record.  According to Plaintiff, "[o]f the 22,838 pages submitted by the Government, a total of six pages are relevant to the protest."  ECF No. 46 at 4.  On May 19, 2022, in response to Plaintiff's motion and an order of the Court, the government "concluded that certain documents should be added to the previously-filed administrative record in this case."  ECF No. 54 at 1.  However, the government also argued in response that beyond the documents it was adding to the administrative record, "the Court should deny Trace's motion because much of the motion is focused on materials that are not properly part of the administrative record," *id*., and the government has "collected and included the documents that [the Defense Information Systems Agency ("DISA")] considered in making the challenged decision to cancel the solicitation and award the bridge [contract] to GDIT," *id*. at 14.  In addition, the government argued at length that it was not required to include pre-decisional or deliberative documents in the record and that the "breadth of [Plaintiff's] requests would include internal, predecisional, and deliberative agency documents . . . ."  *Id*. at 1.

The addition of the documents to the administrative record on May 19th did not, according to Plaintiff, complete the record.  Rather, Plaintiff asserts in reply that,

> [w]hile the Government did manage to more than double the number of pages relevant to the Government's decision to terminate CTSS IV, such an achievement becomes less impressive when it is pointed out that six relevant pages have become thirteen.  Of the seven additional pages, three are slides that contain no information.  The Government . . . has provided virtually nothing apart from the decision itself.

ECF No. 58 at 31.

The Court held oral argument on Plaintiff's motion on June 16, 2022.  During argument, the government represented to the Court (as it also does in its response brief) that, to the best of its knowledge, no other documents exist that should have been included in the administrative record.  Although the Court does not take issue with the government's representations regarding the completeness of the record, because the record appears to be rather thin with regard to the protested agency decisions,[1] the Court is not certain whether these representations actually account for all the material that was directly or indirectly considered by agency decisionmakers in making the protested decisions.  Accordingly, as was discussed at oral argument, the Court, through this order, directs the government to search the agency's materials that relate to this protest and either complete the administrative record with additional material the agency considered in making the protested decisions *or* re-certify to the Court that the administrative record is in fact complete.

---

[1] The Court is not asserting that a "thin" record cannot support the decisions at issue in this, or any other, protest.  It is merely observing that upon a non-thorough, but more than cursory, review of the record and Plaintiff's representations regarding the record, it appears that only a small fraction of the pages in the over 22,000-page administrative record in this case directly relate to the agency decisions that are being challenged.

2

**DISCUSSION**

The case law is clear as to what is to be included in an administrative record in order to permit the Court to conduct effective judicial review of agency action. To begin with, it is axiomatic that the administrative record needs to be "complete" so that the Court can ultimately determine whether the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, the administrative record generally includes "*all* the material that was *developed and considered* by the agency in making its decision." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (emphasis added) (citation omitted); *see also, e.g.*, *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (describing the administrative record in a post-award protest as "the record before the decision maker at the time of the final award"). In other words, the record must include all materials that were "directly or indirectly considered by the agency decisionmakers," *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168–69 (2011) (citation omitted), such that the reviewing court "should have before it neither more nor less information than did the agency when it made its decision," *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). A complete administrative record, therefore, includes any materials "referred to, considered by, or used by [the agency]," *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002), and "[t]he agency may not . . . skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question," *Env't Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978). Conversely, "[t]he record is incomplete if it fails to provide a court with all of the documents, memoranda, and other evidence that was considered directly or indirectly by the agency." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008) (citing *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981); *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982); *NRDC, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir.1975)).

In sum, the "whole administrative record," within the meaning of the Administrative Procedure Act, "is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record"; rather, the "whole administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers," including "evidence contrary to the agency's position." *Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted).

With these principles in mind, the Court remains uncertain—based on statements made in memoranda documenting the challenged decisions—whether the administrative record as currently filed is complete. For example, a review of the April 19th memorandum that purports to cancel the solicitation and award suggests the decisionmaker was relying on other materials to make the decisions. First, as a general matter, the "Facts" section of the memo discusses in the third person things "the Government" considered, while the "Analysis and Recommendation" portion of the memorandum, which purports to cancel the solicitation and award, is written in the first person. ECF No. 19-1. This switch from the third to first person seems to indicate that the

decisionmaker was considering material "the Government" developed in order to make the decision. That is to say, it would appear "the Government" took an action (e.g., looked at an issue, reviewed material, made a determination) and the decisionmaker based the decision on "the Government's" action. The administrative record seemingly then should include whatever material from "the Government" the decisionmaker relied upon to make the challenged decisions.

     Second, particular references in the April 19th memorandum specifically suggest other materials were relied upon by the decisionmaker. For instance, the Facts section states that "as part of the Corrective Action, *the Government reviewed* the current CTSS IV RFP and Statement of Work (SOW) in light of AFCENT's changing requirements such as the need for services in Afghanistan ceased after the U.S. withdrawal, removal of the SATCOM Operational Control Center, and addition of wireless technical support." ECF No. 19-1 at 3 (emphasis added). How does the decisionmaker know the government reviewed this material and what the result of that review was? The material, and thus the answer to this question, does not appear to be documented in the administrative record. In addition, the Facts section states that "[*t*]*he Government also noted* that some of the evaluation criteria were redundant in certain critical areas and the Government's needs would be better served with streamlining these requirements and updating the evaluation criteria. *For example* . . . ." *Id*. (emphasis added). Yet again, the sentence suggests there is other material on which the decisionmaker is relying. After all, the verb "note" generally means "to record or preserve in writing," begging the question of whether there is material the decisionmaker relied upon that is not included in the record. *Note*, *M*erriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/note (last visited June 27, 2022). In addition, the use of the term "for example" further suggests that what is listed in the memo is not everything the decisionmaker had before it, as "for example" in its ordinary usage means that an example is being given that is representative of a larger group of things.

     There are other similar sentences in the Facts section: "The Government takes seriously its duty to ensure a fair competition and a reasonable evaluation process for all offerors. *The Government has determined* that it is necessary to cancel the RFP and conduct a new procurement to fulfill this duty." ECF No. 19-1 at 3–4 (emphasis added). This seems to indicate that there is a government determination that the decisionmaker then relied upon as part of the ultimate decisions protested here. And, "[*t*]*he Government considered* amending the RFP to cure concerns related to the evaluation criteria, but *ultimately concluded* that such changes in the evaluation methodology would require substantial proposal changes from all the offerors and therefore would be unworkable." *Id.* at 4 (emphasis added). Again, the decisionmaker references something "the Government" did that the decisionmaker then appears to have relied upon that is seemingly not in the administrative record. Finally, "between December 2021 and February 2022, *the Government identified* areas of the SOW that require substantial modification to accommodate real world events impacting the fluid needs of CTSS IV IT requirements within AFCENT's SWA AOR. . . . *For example*, . . . ." *Id.* at 4 (emphasis added). Yet, there does not appear to be any material in the record that the decisionmaker could have relied upon to make this statement. Additionally, once again, there is the use of the term "for example" suggesting that more material exists and was relied upon.

The "Analysis and Recommendation" portion of the memo has similar indications that other material absent from the administrative record was relied upon by the decisionmaker to make the protested decisions. For example: "[*a*]*fter careful and thorough review of the facts*, consultation with the AFCENT and AMIC, and in accordance with the terms of the CTSS IV RFP and CTSS IV Contract, I have decided that the Government will terminate Trace's CTSS IV contract for the Government's convenience, cancel the current CTSS IV RFP, and transfer the CTSS IV requirement to AMIC for reprocurement." *Id.* at 4–5 (emphasis added) (footnote omitted). The Court is unsure as to how one could "review," carefully and thoroughly, "facts" that apparently—because they are not included in the administrative record—are not reviewable. To "review the facts" implies that the decisionmaker is examining or studying some material an additional time. Yet, there does not appear to be anything included in the administrative record that one could examine or study that supports the challenged decisions other than the decisions themselves.

In addition, several sentences reference recommendations or decisions that the decisionmaker appears to rely upon, but those do not appear to be included in the administrative record:

- The *recommended requirement changes* include a change to supported locations that will be required in SWA in accordance with mission requirement changes. *For example*, . . . .

- Consistent with these findings, *DITCO has recommended* that AFCENT update these evaluation criteria for the reprocurement.

- Additionally, *DISA and the Air Force determined* that managing this contract through AMIC is in the best interests of the Government.

*Id.* at 5 (emphasis added). The administrative record does not appear to include any "recommended requirement changes," a DITCO recommendation, or a determination by DISA and the Air Force. Yet, the decisionmaker says all three were relied upon to make the challenged decisions.

As explained above, the administrative record must include *all* the material developed and considered by the agency in making its decision. But the administrative record currently filed in this case does not appear to contain *any* of the material the Court has just identified that appears to have been considered by the decisionmaker in making the decisions Plaintiff protests regarding the cancellation of the solicitation at issue and the cancellation of the award of a contract to Plaintiff. This also appears to be true regarding the justification and approval for sole source award document ("J&A"), a decision Plaintiff is also protesting. While that document itself is much more substantial than the four-page cancellation memo, two potential administrative record issues seem apparent to the Court from reading the J&A. First, as Plaintiff points out, ECF No. 58 at 30, the J&A refers in several places to "market research" that was clearly relied upon in making the decision to sole source the bridge contract. Yet, it does not appear to the Court that the administrative record contains any market research. Second, the version of the J&A contained in the administrative record is unsigned. Many of the legal authorities relied on in the J&A seem to require sign-off at a certain supervisory level. An

unsigned document does not allow the Court to determine whether in fact the proper level of sign-off was obtained. *See generally* ECF No. 19-1. Although the Court may in some instances not require such a signature sheet be included in the administrative record, given that authority to approve certain actions may be an issue at some point in this protest, more is needed than an unsigned document with a signature block to show that proper approval was obtained.

The Court recognizes that the government has represented that the administrative record is complete, and the Court of course cannot compel the government to complete the administrative record with materials that do not exist. However, as explained above, there are reasons for the Court to suspect that the current record is not, in fact, complete.

First, there is the simple matter of the relatively minor amount of included material that is relevant to the challenged decision. Second, as outlined above, the decision memoranda at issue contain references to what would seem to be material relied upon by the decisionmaker(s) that is not then included in the administrative record. Third, as alluded to above, the government's extensive reliance on arguments related to pre-decisional and deliberative documents in opposition to the motion to compel is curious if no additional materials that should have been included in the administrative record exist. If no such materials exist, it seems that it would be simple enough to say just that and back it up with argument regarding the legal requirements for a complete administrative record. Thus, the implication of the government's pre-decisional and deliberative materials argument is that there are, in fact, materials directly or indirectly considered by agency decisionmakers that the government has not included in the record. If that is the case and the government believes such documents are legally privileged, the proper course would have been to assert a legally protected privilege over those materials and to submit a privilege log to potentially allow the Court to assess the propriety of the asserted privilege based on an in camera review. *See Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489 (2019) (denying a motion to complete the record after an in camera review of documents excluded from the record); *EFW, Inc. v. United States*, No. 20-92C, 2020 WL 1164496 (Fed. Cl. Mar. 3, 2020) (granting in part a motion to supplement the administrative record after in camera review); *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at *5 n.11 (Fed. Cl. Apr. 28, 2014) (granting in part a motion to complete the administrative record, particularly as to an email which constituted "correspondence between the agency . . . and the awardee concerning the procurement," which is "presumptively a part of a complete record in a bid protest").

In short, it is unclear to the Court whether the government has filed a complete administrative record containing "all the material that was developed and considered by the agency in making its decision." *Cubic Applications, Inc.*, 37 Fed. Cl. at 342. Accordingly, the Court directs the government to either complete or re-certify completion of the record. While it may be the case that the record before the Court will support the challenged decisions, and that if the record does *not* support the challenged decisions the proper course may be to simply send this matter back to the agency, a final examination of the agency's materials related to the challenged decisions in order to certify completeness appears prudent.

## CONCLUSION

       For the foregoing reasons, on or before **July 8, 2022,** the government (1) shall re-examine its materials related to the decisions challenged in this protest to ensure that all materials that were developed and considered by the agency in making the challenged decisions are included in the administrative record; and (2) shall either **FILE** a complete administrative record with the Court, along with a certification that the record is now complete, *or* **CERTIFY** to the Court that the already-filed record is the complete record consistent with this memorandum opinion and order and the cases cited herein. The government **SHALL ALSO** review the administrative record for completeness in light of the motion for leave to amend the complaint that was granted today by separate order. *See* ECF No. 65.

**IT IS SO ORDERED**.

                                                  s/ Zachary N. Somers
                                                  ZACHARY N. SOMERS
                                                  Judge